UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LYNDON JACKSON, | CASE NO. C21-654 MJP |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT |
| v. | |
| THE BOEING COMPANY, | |
| Defendant. | |

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 40) and Plaintiff's Motion to Appoint (Dkt. No. 49). Having considered the Motions, Plaintiff's Opposition (Dkt. No. 46), the Response of Daniel DeLue (Dkt. No. 50) the Reply (Dkt. No. 48), and all supporting materials, the Court GRANTS the Motion to Dismiss and DISMISSES this action WITH PREJUDICE and DENIES the Motion to Appoint.

## BACKGROUND

Plaintiff Lyndon Jackson is Black/African-American and military veteran who alleges that he endured racial discrimination while employed at Boeing from March 2019 through July 2020. (See, e.g., Amended Complaint ("AC") ¶¶ 1, 18-19, 22-24, 36-37, 40-43, 45-50, 54, 56-95.) Jackson alleges that Boeing engaged in a variety of discriminatory conduct, including: (1) failure to hire; (2) failure to train and coach; (3) "[d]enial of instruction and other necessary communication; (4) "[d]enial of necessary tools and software"; (5) failure to promote; (6) termination; (7) unequal terms and conditions of employment; and (8) retaliation. (See id.; AC at 32.) Jackson pursues the following claims: (1) violations of Title VII for disparate treatment, hostile work environment, and retaliation; (2) violations of the Washington Law Against Discrimination ("WLAD") for disparate treatment, hostile work environment, and retaliation; (3) violations of 42 U.S.C. § 1983; (4) fraud; and (5) violations of Snohomish County Code 2.460.070, which prohibits discrimination. (AC ¶ 95; id. at 2-5, 32.)

### A.    Procedural Background

Prior to filing suit, Jackson filed a charge with the EEOC in January 27, 2021, and received a notice of right to sue letter on February 16, 2021. (AC at 33-34; Dkt. No. 10-1 (EEOC Letter and Complaint).) In the EEOC Charge, Jackson alleged that he was discriminated and retaliated against on account of his race. (Dkt. No. 10-1.) Jackson appended the EEOC filings to his initial Complaint.

The Court previously granted Boeing's motion to dismiss, finding that Jackson had failed to state a claim for relief in his original complaint. (Order on Motion to Dismiss (Dkt. No. 38).) The Court dismissed some claims with prejudice, but granted leave to amend. (Id.) Plaintiff filed

his thirty-six page Amended Complaint, which contains more detailed allegations than the initial

Complaint. (Dkt. No. 39.)

**B.      Factual Background**

The Court reviews the alleged instances of racial discrimination that Jackson endured

while employed at Boeing, as well as other factual allegations bearing on Jackson's experience

as an employee that motivates this lawsuit.

**1.        Discrimination in Job Placement**

Jackson alleges that he confronted discrimination on his very first day at Boeing. He

claims that Boeing hired him as Structural Design Engineer, but unilaterally changing his role to

that of a Structural Analysis Engineer shortly after he began in March 2019. (AC ¶¶ 11-12, 23.)

This resulted in "discriminat[ion] . . . by Defendant Boeing when he was continually forced to

perform a Structural Analysis Engineer job for which he was not hired and for which he was not

trained." (Id.) And, according to Jackson, his "White counterparts, White males with similar

education and experience were given job titles, responsibilities, and classifications which fit their

respective[] levels of experience, education, and expertise." (Id. ¶ 23.) Although Jackson was

reassigned between two groups, he was never again assigned as a Structural Design Engineer.

**2.        Failure to Train**

Jackson also alleges that Boeing promised to provide him training, but failed to follow

through, and that this stymied his ability to meet or exceed work expectations. (See AC ¶¶ 9, 23.)

Jackson claims that this treatment diverged from the treatment of his White counterparts who

were given adequate training. (See id.) The Court reviews Jackson's more specific allegations of

inadequate training which center on his experience working under four different "lead engineers"

to whom he reported. (See, e.g., AC ¶¶ 17, 22, 35, 51.)

1    Jackson first reported to lead engineer KM (a White male), within the 767 Aft Fuselage

2    Group from March 2019 to June/July 2019. (AC ¶¶ 17, 25.) Jackson alleges that KM provided no

3    training and simply told him to "look at what the last person did." (Id. ¶ 25.) Jackson alleges that

4    another coworker, AS, actually provided him with insights on how to complete the work. (Id.)

5    In June or July 2019, Jackson joined the 777X Forward Fuselage Group and reported to

6    two lead engineers: PBR (a White male) and KD (an Asian male). (AC ¶¶ 17, 35.) Jackson

7    alleges that he sought training and more information about loads and other engineering issues to

8    "better understand the structural analysis process within the Structures Organization." (Id. ¶ 35.)

9    But in response, PBR, told him "look at what the last person did." (Id.) And the other lead

10    engineer, KD, suggested he look at various books that were not supplied by Boeing. (Id.)

11    Jackson alleges that both PBR and KD failed to provide him with any feedback on his work so

12    that he might improve his performance. (Id. ¶ 39.) And after PBR and KD were reassigned,

13    Jackson then alleges he had no lead engineer supervising him for roughly two months, unlike

14    "similarly situated majority-White engineers." (Id. ¶ 40.)

15    Jackson also alleges that the final lead engineer to whom he reported, BB (a White male)

16    failed to provide adequate training. (See AC ¶¶ 44, 52-56.) According to Jackson, BB told him to

17    make "quality improvements to analysis" beyond his responsibility as a Level 1 engineer and

18    that BB merely told him to "'do what I told you' or something of a similar nature." (Id. ¶¶ 17,

19    51, 53.) Jackson alleges that "similarly situated majority-White counterparts" were not asked to

20    make these same level of improvements. (Id. ¶ 51.) Jackson also alleges that although BB gave

21    him access to the Electronic Coordination Sheet Library (ECSLib), BB refused to allow him use

22    of the "PATRAN superelement," an electronic resource Jackson asserts was necessary for him to

23    perform his job well. (Id. ¶ 56.) Jackson alleges that BB feared he might "alter or otherwise

24

'mess up' the model if he had access," apparently due to an incident when "some other random engineer made changes to the PATRAN superelement he was not supposed to make." (<u>Id.</u> ¶ 56.) Jackson alleges that "similarly situated majority-White Structural Analysis Engineer counterparts within the company and in similar positions throughout the aerospace industry are allowed access to PATRAN and/or similar aircraft structural  models." (<u>Id.</u> ¶ 56.) Jackson also alleges that BB held a closed-door meeting with him during which he said, "Plaintiff was just 'lazy,' a common stereotype for Blacks/African-Americans." (<u>Id.</u> ¶ 54.) But after Jackson described his predicament, "BB responded 'I think I see what is going on here'" which Jackson inferred to mean that BB understood he was suffering from disparate treatment on account of his race. (<u>Id.</u>) Following this private meeting, BB allegedly told everyone at a weekly team meeting that "'we need to do a better job of getting Lyndon up to speed'" which caused Jackson to think that "things might turnaround." (<u>Id.</u> ¶ 55.) But according to Jackson, "little continued to be done to correct the previous wrongs and damages to" him. (<u>Id.</u>) Jackson also alleges that "BB would occasionally claim Plaintiff was stupid and berate him in front of his coworkers rather than blame Plaintiff's shortcomings on the lack of fundamental training and coordination in the Structures organization and the treatment he had been facing." (<u>Id.</u> ¶ 63.)

### 3.    Discrimination from Managers

Jackson also details alleged discrimination that he experienced from the three White managers to whom he reported. Jackson first reported to DM from March 2019 to June or July 2019. (AC ¶ 17.) He then reported to TS until September or October 2019, and then MP until July 2020. (<u>Id.</u>)

As to the first manager, Jackson states that DM discussed the change in his initial role as Structural Design Engineer to assure him that "his resume better fit the Structural Analysis

1   engineer position and he would 'see how it goes.'" (AC ¶ 12.) Jackson alleges further that "upon

2   noticing issues as [he] was acclimating to Structural Analysis . . . under [lead engineer] KM,

3   manager DM reassigned [Jackson] from the 767 program to the 777X program around June

4   2019." (AC ¶ 29.) Jackson does not identify any racial animus or retaliatory motive to this move,

5   but states that his "majority-White counterparts were allowed to work in the jobs for which they

6   [were] interviewed, hired, and trained." (Id.) According to Jackson, DM assured him that he

7   would be able to use newer software in the 777X group and benefit from reporting to two lead

8   engineers. (Id.) DM then retired in June 2019, and there are no further allegations involving him.

9   (Id. ¶ 30.)

10      As to the second manager, Jackson alleges that TS failed to provide any meaningful

11   oversight or assistance. TS initially asked how he was doing, but once Jackson asked for a raise,

12   "TS stopped asking about [Jackson's] progress and failed to maintain a relationship with a direct

13   report." (AC ¶ 32.) And at some point TS "made an off-hand comment regarding the tidiness of

14   Plaintiff's beard." (Id. ¶ 36.) Jackson explains that he had not been able to maintain a beard while

15   in the military, and that "[h]air has been a sensitive subject for Blacks/African-Americans in the

16   workplace.' (Id.) TS also provided Jackson with a negative performance rating as part of the late

17   2019 performance management discussion. (Id. ¶ 45.) Jackson alleges that TS failed to

18   acknowledge or ask about Jackson's background and efforts and faulted him in areas where he

19   had simply not been given sufficient training. (Id.) TS gave him a "met expectations" rating,

20   which is alleged to be an unfavorable rating. (Id.) When Jackson asked TS why, TS wrote in an

21   email that Jackson "'should learn to 'make his manager look good' as a subordinate, indicative

22   of [Boeing's] internal culture of nepotism and oppression." (Id. ¶ 46.) At some point during TS's

23   management, Jackson alleges he endured a specific racist moment during a team building

24

1  exercise in the 777X group. (Id. ¶ 37.) Jackson was asked his favorite food, which he said was

2  fried chicken. (Id.) A coworker said, "I wish you had not said that," and "the group laughed," but

3  remained silent when his Asian coworker said he liked teriyaki chicken. (Id.)

4        Jackson alleges that his final manager, MP, continued to discriminate against him by

5  failing to reassign him and by engaging in tokenism. Jackson alleges that MP refused to transfer

6  Jackson so he could "learn the aircraft certification" and because he "did not know aircraft

7  structure." (Id. ¶ 49.)  (AC ¶¶ 47, 49, 70.) But at the same time, MP denied Jackson access to

8  information and training necessary to learn aircraft certification and structures. (Id.) Jackson

9  alleges that unlike similarly-situated White counterparts, Boeing not only failed to teach him

10  about aircraft structure, but denied him access to the tools needed to gain that experience. (Id. ¶¶

11  49-50.) Jackson alleges that in February 2020, MP asked him to make a Black History Month

12  presentation to the 777X Forward Fuselage group "because he was the only Black employee in

13  the group." (AC ¶ 58.) Feeling "singled out for being the 'token Black employee,' [Jackson]

14  denied the request." (Id.) Instead, he asked MP to join him at the Boeing Black Employees

15  Association presentation on Black History Month—a request MP rejected. (Id. ¶ 59.) Jackson

16  notes that MP had previously told him he "attends 'one diversity event a year.'" (Id. ¶ 57.)

17        Jackson also alleges that MP denied his request to participate in PATRAN training in

18  March 2020 on a recommendation from lead engineer BB that use of PATRAN was outside of

19  Jackson's scope of work. (Id. ¶ 60.) But Jackson alleges BB had previously recommended he

20  participate in such training. (Id.) After the denial, Jackson reached out to MP's manager (the "L

21  level manager"), but Jackson provides no detail on the results of this request. (Id. ¶ 61.) He does

22  allege that afterward, MP made a remark during a group meeting that "the only people unhappy

23  in the group have no friends." (Id. ¶ 73.) Jackson alleges that MP made this remark to the

24

1    majority-White group in reference to him and "indicative of Defendants' internal culture of

2    nepotism." (Id.)

3          **4.**      **Requests to be Reassigned**

4          Jackson alleges that from 2019 to July 2020, he "constantly [but unsuccessfully] applied

5    to other job requisitions within the company" to avoid poor managers and the "racially hostile

6    environment in which he forced to work." (AC ¶ 67.) He claims he was rebuffed in all of his

7    efforts, even when he pointed out that he had a security clearance that would have satisfied

8    certain open positions. (See id. ¶¶ 68-69.) Jackson does not state whether he applied for any

9    specific job and was denied. The most specific detailed allegation is that he received a

10    reassignment form in June or July 2020 "after 8 months of continually asking his manager MP to

11    be reassigned. . . ." (Id. ¶ 76.) He does not state whether he filled out the form, but he was

12    terminated shortly thereafter.

13          **5.**      **Negative Retention Ratings and Termination**

14          After receiving negative retention ratings in March and May 2020, Jackson was given a

15    Worker Adjustment and Retraining Notification in May 2020 and laid off in July 2020. (AC ¶

16    74.) Jackson alleges that the poor retention rating "was given to [him] in retaliation after

17    contacting his L level manager in March following the denial of PATRAN training." (Id. ¶ 73.)

18    In his EEOC charge, Jackson alleged that "[t]he reason given for the lay-off is that the company

19    was going through financial issues" and that "[m]any other employees were laid off." (Dkt. No.

20    10-1 a 4.) But Jackson insists his low retention rating was the product of inadequate training and

21    treatment that differed from White coworkers due to his race and as retaliation for complaining

22    to the L level manager about the PATRAN training denial.

23

24

1

### 6.  General Allegations of Hostile Work Environment

2

Jackson also provides allegations about the work environment at Boeing, though none of

3

the news reports appear to touch directly on his experience. (AC ¶¶ 78-90.) Jackson discusses a

4

news article about a Black employee who was harassed in South Carolina and Louisiana from

5

2017 through 2019, and a manager in Everett who found racist symbols on his desk in 2020. (Id.

6

¶¶ 80, 85.) Jackson also relates a news article explaining that Boeing terminated and disciplined

7

many employees who made racially insensitive posts on Boeing's internal social platform in the

8

wake of George Floyd's murder. (Id. ¶ 84.) But Jackson does not explain how these news events

9

touched on his own day-to-day work experience. Instead, Jackson's hostile-work-environment-

10

specific allegations are that he was treated as "a token Black engineer" who was "ignored,

11

belittled, and asked to humiliate himself by giving a private Black History Month presentation to

12

the same people who were treating him as 'less than' his majority-White counterparts." (Id. ¶¶

13

90-91.)

14

### ANALYSIS

15

### A.  Legal Standard

16

There are certain minimum standards that apply to any complaint filed in federal district

17

court. Plaintiff's complaint must satisfy the standards set out in Rule 8 of the Federal Rules of

18

Civil Procedure. To satisfy Rule 8, a complaint "must contain sufficient factual matter, accepted

19

as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662,

20

678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial

21

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

22

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "But

23

where the well-pleaded facts do not permit the court to infer more than the mere possibility of

24

1    misconduct," the allegations are inadequate to satisfy Rule 8. Id. at 679. And "[w]here a

2    complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

3    line between possibility and plausibility of entitlement to relief." Twombly, 559 U.S. at 557

4    (quotation omitted); see Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004) ("[C]onclusory

5    allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.")

6    But the Ninth Circuit "continues to construe pro se filings liberally when evaluating them under

7    [the] Iqbal" standard. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). This "obligation

8    remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings

9    liberally and to afford the petitioner the benefit of any doubt." Id. (citation and quotation

10   omitted).

11   **B.      Disparate Treatment Discrimination Claims**

12            Boeing asks the Court to dismiss Jackson's disparate treatment claims on the theory that

13   they: (1) rely on actions that predate April 2020, which the Court has found barred by the statute

14   of limitations; (2) fail to contain the requisite elements to survive dismissal. The Court agrees in

15   part that some of the claims Jackson pursues are barred by the statute of limitations and that the

16   Amended Complaint fails to state a claim for disparate treatment.

17            **1.      Untimely Claims**

18            Title VII of the Civil Rights Act requires a plaintiff challenging a discrete adverse

19   employment action to file a charge of discrimination with the EEOC within 300 days of the

20   employment action. See 42 U.S.C. § 2000e-5(e)(1). If the EEOC tells the plaintiff that it will not

21   pursue the charge and gives the plaintiff a right to sue notice, the plaintiff must then file their

22   lawsuit within 90 days of receiving notice. 42 U.S.C. § 2000e-5(f)(1). Jackson timely filed his

23

24

1  lawsuit within 90 days of the Right to Sue letter, but Boeing challenges the timeliness of his

2  underlying claims.

3      To be timely, Jackson's Title VII claims premised on discrete acts of discrimination must

4  have occurred no earlier than April 2, 2020, which is 300 days before January 27, 2021 (the date

5  he filed his EEOC complaint). The previously noted that Jackson's "treatment arising out of the

6  following events are untimely: (1) Jackson's hiring in March 2019; (2) Jackson's reassignment to

7  the 777 Fuselage Group in July 2019; (3) Boeing's apparent refusal to hire Jackson for another

8  job that he applied for in November 2019; (4) Boeing's denial of Jackson's request for temporary

9  rotation assignment; and (5) an adverse performance review from December 2019." (Order at 6.)

10     Jackson's Amended Complaint again identifies alleged acts disparate treatment predating

11  April 2, 2020. Any Title VII claims of disparate treatment stemming from those acts are

12  untimely and barred by the statute of limitations. Those claims remain subject to the Court's

13  prior Order dismissing them with prejudice. (Order at 6-7.)

14      **2.      Inadequately Pleaded Claims**

15      Boeing argues that Jackson: (1) has identified only one actionable adverse employment

16  action, and (2) all of his theories of disparate treatment fail to identify similarly situated

17  individuals who were treated more favorably. The Court agrees that dismissal is proper, though

18  not for all of the reasons Boeing advances.

19      To assert a claim of disparate treatment under Title VII and the WLAD, Jackson must

20  satisfy four elements by alleging that: "(1) [he] belongs to a protected class; (2) [he] was

21  qualified for [his] position; (3) [he] was subject to an adverse employment action; and (4)

22  similarly situated individuals outside [his] protected class were treated more favorably." Davis v.

23  Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008); Washington v. Boeing Co., 105 Wn. App.

24

1, 13 (2000). As to the third element, an adverse employment action means an action that "materially affect[s] the compensation, terms, conditions, or privileges of . . . employment." Davis, 520 F.3d at 1089 (quotation and citation omitted). And as to the fourth element, Jackson "must identify employees outside [his] race . . . who were similarly situated to [him] in all material respects but who were given preferential treatment; they must have similar jobs and display similar conduct." Campbell v. Hawaii Dep't of Educ., 892 F.3d 1005, 1015 (9th Cir. 2018) (internal quotation marks and citation omitted).

The Court agrees with Boeing that Jackson has failed to adequately allege a disparate treatment claim premised on his failure to receive adequate training, coaching, and reviews. Boeing first argues this claim fails to identify an adverse employment action because the gaps in Jackson's training and management did not materially affect the terms of his employment. (See Reply at 10.) The Court disagrees. Jackson has alleged that the failure to be trained, coached, and reviewed materially affected his ability to meet the expectations of his employment and that he was given low ratings a result of not being given the guidance necessary to meet expectations. These are sufficiently alleged to be adverse employment actions. See Davis, 520 F.3d at 1089. But the Court agrees that Jackson has not shown that similarly situated individuals outside of the protected class were treated more favorably. The Amended Complaint fails to identify any specific individuals who were treated more favorably and how they were similarly situated. And the Court can find nothing more than bare allegations tracking the prima facie element, which lacks the required specificity to sustain this claim. See Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2008). This is fatal to Jackson's claim.

The Court also agrees that Jackson's disparate treatment revolving around alleged refusals to reassign him are inadequately pleaded. First, Jackson fails to identify how his

1   manager's refusal to reassign him materially affected the terms of his employment. Second,

2   Jackson has not alleged that anyone outside of his protected class was treated more favorably.

3   Jackson's allegations about White people who were reassigned fail to specify who these

4   individuals are and how they were similarly situated. The claim cannot proceed given the

5   absence of these specific allegations.

6          The Court further agrees with Boeing that Jackson's disparate treatment claim related to

7   his termination continues not to identify similarly situated individuals outside the protected class

8   who were treated more favorably. The Amended Complaint fails to identify anyone who was

9   similarly situated and yet not laid off. In his Opposition, Jackson newly identifies three White

10  engineers who were "assigned the job role for which they interviewed and were hired, they were

11  not 'laid off,' and they are still employed with the company." (Opp. at 4.) Although the Court

12  need not consider these new allegations made outside the Amended Complaint, it does so to

13  accommodate the fact that Jackson is appearing pro se and to inform its decision as to whether

14  leave to amend should again be given. See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir.

15  2005). Even with these three comparators, Jackson has not shown how each of them were

16  similarly situated. Jackson only states that these three engineers were assigned the jobs they

17  interviewed for and were not laid off. But the Court has no way to know whether they were

18  similar "in all material respects but who were given preferential treatment." Campbell, 892 F.3d

19  at 1015 (internal quotation marks and citation omitted). So even if the Court considers this new

20  allegation outside of the Amended Complaint, it does not save Jackson's claims.

21         Despite having been given leave to amend his disparate treatment claims, Jackson has

22  failed to identify sufficient facts to support them. The Court finds that further amendment would

23

24

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT - 13

1  not save these claims. The Court therefore DISMISSES the disparate treatment claims brought

2  under Title VII and the WLAD WITH PREJUDICE.

3  **C.      Hostile Work Environment Claims**

4          The Court finds that Jackson has failed to plead actionable hostile work environment

5  claims under Title VII and the WLAD.

6          To plead a hostile work environment claim under Title VII, Jackson "must show: (1) that

7  he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct

8  was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the

9  conditions of the plaintiff's employment and create an abusive work environment." <u>Vasquez v.</u>

10  <u>Cnty. of Los Angeles</u>, 349 F.3d 634, 642 (9th Cir. 2003), <u>as amended</u> (Jan. 2, 2004). "Whether

11  the environment constituted a racially hostile work environment is determined by looking at the

12  totality of the circumstances, including the frequency of the harassing conduct, the severity of the

13  conduct, whether the conduct was physically threatening or humiliating or a mere offensive

14  utterance, and whether it unreasonably interfered with an employee's work performance." Ninth

15  Cir. Model Civ. Jury Instr. 10.5 (modified). "In addition, '[t]he working environment must both

16  subjectively and objectively be perceived as abusive.'" <u>Vasquez</u>, 349 F.3d at 642 (quoting

17  <u>Brooks v. City of San Mateo</u>, 229 F.3d 917, 923 (9th Cir. 2000) (internal quotation marks and

18  citation omitted)).

19          "To establish a prima facie case for a hostile work environment claim based on race

20  [under the WLAD], the plaintiff-employee must show (1) the harassment was unwelcome, (2)

21  the harassment was because of race, (3) the harassment affected the terms or conditions of

22  employment, and (4) the  harassment is imputed to the employer." <u>Washington</u>, 105 Wn. App. at

23  12–13. "The third element requires that the harassment be 'sufficiently pervasive so as to alter

24

1    the conditions of employment and create an abusive working environment[,] . . . to be

2    determined with regard to the totality of the circumstances.'" <u>Antonius v. King Cnty.</u>, 153 Wn.2d

3    256, 261 (2004) (quoting <u>Glasgow v. Ga–Pac. Corp.</u>, 103 Wn.2d 401, 406–07 (1985)).

4         The Court first finds that Jackson has not adequately pleaded severe or pervasive conduct

5    that satisfies either Title VII or the WLAD. Jackson has alleged instances where he endured

6    racist comments. This includes comments from TS about the tidiness of Jackson's beard (AC ¶

7    36), a comment from a fellow co-worker about Jackson's identification of fried chicken as his

8    favorite food (<u>id.</u> ¶ 37), MP's request for Jackson to give a presentation about Black History

9    Month (<u>id.</u> ¶ 58), BB's statement that Jackson was "lazy" (<u>id.</u> ¶ 54), and that BB "would

10   occasionally claim Plaintiff was stupid and berate him in front of his coworkers" (<u>id.</u> ¶ 63).

11   These events appear to be isolated and not part of pervasive conduct. The comment about fried

12   chicken and the request to speak about Black History Month were isolated. And as Jackson

13   notes, the comment about his beard was an "off-hand comment." (<u>Id.</u> ¶ 36). As to BB, Jackson

14   alleges that BB immediately recognized Jackson was not lazy and needed more training (<u>id.</u> ¶¶

15   54-55). And the allegations about BB berating him are vague and do not contain any allegations

16   that concern his race. Considering the totality of the allegations, the Court finds that Jackson has

17   failed to identify a hostile work environment that is objectively abusive. <u>See</u> Ninth Cir. Model

18   Civil Jury Instr. 10-5; <u>Antonius</u>, 153 Wn.2d at 261. Additionally, Jackson has not described these

19   instances as involving conduct that was physically threatening and he has not explained how any

20   of them unreasonably interfered with his work performance. <u>See id.</u> While the Court finds the

21   alleged conduct offensive and insensitive, it does not reach the level required to be considered a

22   hostile work environment. <u>See</u> <u>Vasquez</u>, 349 F.3d at 643 (explaining that the Ninth Circuit has

23   found no "hostile work environment [existed] despite allegations that the employer posted a

24

1   racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules,

2   provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers,

3   and kept illegal personnel files on plaintiffs because they were Latino").

4          The Court notes separately that Jackson's allegations about other problems with racism at

5   Boeing does not save his claim. (See AC ¶¶ 78-90.) These instances of racism identified by

6   Jackson as occurring at Boeing do not appear to concern him in a specific, personal way. The

7   Court certainly takes note of them. But Jackson has not linked them in any way to his own

8   experience such that it might satisfy his requirements to show a hostile work environment.

9          The Court has given Jackson an opportunity to amend these claims, and despite lengthy

10  amendments, Jackson has not stated a hostile work environment claim under the WLAD or Title

11  VII. The Court DISMISSES these claims WITH PREJUDICE.

12  **D.     Retaliation Claims**

13         Boeing seeks dismissal of Jackson's retaliation claim brought under the WLAD and Title

14  VII. The Court agrees that Jackson has failed to plead sufficient facts to withstand dismissal.

15         To state a claim for retaliation under Title VII, Jackson must allege that: (1) he engaged

16  in activity protected under federal law; (2) Boeing took an adverse employment action against

17  him; and (3) but-for his protected activity, he would not have suffered an adverse action. 42

18  U.S.C. § 2000e-3(a); Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013) ("[A]

19  plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected

20  activity was a but-for cause of the alleged adverse action by the employer."); see Ninth Cir. Jury

21  Instr. No. 10.8. And to state a claim for retaliation under the WLAD, Jackson must allege: (1)

22  involvement in a protected activity; (2) Boeing took an adverse employment action against him;

23

24

1  and (3) there is a causal link between the protected activity and the adverse action. RCW

2  49.60.210(1); <u>Washington</u>, 19 P.3d at 1048.

3       The Court finds that Jackson has not satisfied the first element of his claim because he

4  has not identified any protected activity in which he engaged. Plaintiff needed to allege facts

5  showing that he "opposed any practice made an unlawful employment practice by" Title VII or

6  the WLAD. <u>See</u> 42 U.S.C. § 2000e-3; <u>Learned v. City of Bellevue</u>, 860 F.2d 928, 932-33 (9th

7  Cir. 1988); RCW 49.60.210(1); <u>Alonso v. Qwest Commc'ns Co., LLC</u>, 178 Wn. App. 734, 754

8  (2013). But Jackson has not. At most, Jackson alleges that he received a negative retention rating

9  from MP as retaliation for having reported MP's refusal to approve PATRAN training to the L

10 level manager. But Jackson has not alleged that his complaint to the L level manager was an

11 opposition to discrimination. Rather, his report to the L level manager was to complain about the

12 denial of his request for PATRAN training. The Court is unable to find any allegations that the

13 denial of PATRAN training was racially motivated or that the complaint to the L level manager

14 concerned racial discrimination. Having scoured the remainder of the Amended Complaint, the

15 Court is unable to find any other claimed actions that might constitute actionable protected

16 activity that could save this claim. Jackson has therefore failed to satisfy the first element of his

17 retaliation claims, which is alone fatal to the claims.

18       Additionally, Jackson has not adequately linked his report to the L level manager to the

19 low retention rating—the purported adverse action. Jackson's Amended Complaint is vague as to

20 when he reported to the L level manager. It appears to have occurred at some point in March

21 2020, the same month when he received his first low rating. (AC ¶¶ 61, 73.) But without greater

22 specificity, the Court struggles to find this to be an adequately alleged causal link even if the

23 complaint was construed to be protected activity. And while the low rating in May 2020 might

24

1    be causally linked, Jackson has not provided adequate allegations to make that connection. Thus,

2    Jackson has failed to satisfy the causation element of the claims.

3           The Court DISMISSES Jackson's retaliation claims given that he has not adequately

4    alleged his engagement in a protected activity or causation. And given that Jackson has had

5    ample opportunity to amend this claim, the Court finds dismissal is appropriate WITH

6    PREJUDICE.

7    **E.      Section 1983 and Snohomish Claims**

8           Boeing has moved to dismiss Jackson's Section 1983 claim and his claims brought under

9    the Snohomish County Code. Jackson has provided no opposition. The Court deems this an

10   admission that the motion has merit on both issues. See Local Civil Rule 7(b)(2). The Court also

11   notes that there are no allegations that Boeing acted under color of state law, which is fatal as to

12   the Section 1983 claim. And Jackson has not identified a private right of action under the

13   Snohomish Code. As such, the Court GRANTS the Motion and dismisses these claims WITH

14   PREJUDICE.

15   **F.      Fraud Claim**

16          The Court agrees with Boeing that Jackson has not stated a claim for fraud.

17          To pursue a claim of fraud, Jackson must meet the higher pleading standard of Federal

18   Rule of Civil Procedure 9(b). This requires him to "state with particularity the circumstances

19   constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied

20   by 'the who, what, when, where, and how' of the misconduct charged." Kearns v. Ford Motor

21   Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quotation omitted). And under Washington law, to

22   state a claim of fraudulent inducement, plaintiff must provide clear, cogent, and convincing

23   evidence that "(1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the

24

1   speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to

2   whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation

3   is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon

4   it, and (9) consequent damage." <u>Elcon Constr., Inc., v. E. Wash. Univ.</u>, 174 Wn.2d 157, 166 (

5   2012).

6          Jackson fails to plead his fraud claim with sufficient particularity to survive dismissal. As

7   the Court understands the claim, Jackson alleges he was fraudulently induced to work at Boeing

8   on the premise that he would have training and there would be no rotation work. (<u>See</u> AC ¶ 9.)

9   But Jackson does not state who made these statements, any information about whether the

10  speaker knew the statements to be false, and the intent of the speaker. This is fatal to the claim.

11  <u>See</u> <u>Elcon</u>, 174 Wn.2d at 166. To the extent that Jackson implies that he was fraudulently

12  induced to start at Boeing as a Structural Design Engineer, he has failed to show how that

13  statement was false when it was made. He admits he started work as a Structural Design

14  Engineer, and later was reassigned as a Structural Analysis Engineer. (AC ¶ 11.) Jackson makes

15  no allegations that he was told he would only be a Structural Design Engineer, and he otherwise

16  fails to allege any facts surrounding the who, what, when, where, why or how of this purported

17  fraud.  The Court finds the alleged fraud inadequately pleaded. The Court GRANTS Boeing's

18  Motion as to this claim and DISMISSES this claim WITH PREJUDICE.

19                                          **CONCLUSION**

20         The Court remains sensitive to the struggles that Jackson identifies in his employment at

21  Boeing. As alleged, Jackson encountered listless managers and ineffective lead engineers, as

22  well as inadequate training and support. Jackson also alleges that he suffered through several

23  racist incidents that were thoughtless and offensive and no doubt contributed to his unhappiness.

24

But the claims Jackson has chosen to pursue impose specific burdens in order to be allowed to proceed. Although the Court has given Jackson two opportunities to plead his claims, he continues not to provide sufficient allegations to satisfy the requirements. The Court continues to find fatal defects in each of the claims asserted and it finds that they cannot be saved by further amendment. The Court thus GRANTS Boeing's Motion to Dismiss and DISMISSES all of the claims in the Amended Complaint WITH PREJUDICE. This Order terminates this action.

The Court also DENIES Jackson's Motion to Appoint given its dismissal of this action with prejudice and its finding that Jackson's claims lack sufficient merit.

The clerk is ordered to provide copies of this order to Plaintiff and all counsel.

Dated November 9, 2022.

Marsha J. Pechman
United States Senior District Judge